# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 1371 | **DATE** | 6/25/2003 |
| **CASE TITLE** | ROBBINS vs. PROVENA HOSPITALS, INC. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the n of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Motion to dismiss is granted/denied in part. Enter memorandum opin and order.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | | | **Document Number** |
| | No notices required. | | | number of notices | | | |
| | Notices mailed by judge's staff. | | | | | | |
| | Notified counsel by telephone. | | | JUN 2 7 2003 | | | |
| ✓ | Docketing to mail notices. | | | date docketed | | | |
| | Mail AO 450 form. | | | docketing deputy initials | | | |
| | Copy to judge/magistrate judge. | | | | | | |
| DW | courtroom deputy's initials | U.S. DISTRICT COURT CLERK 03 JUN 26 PM 6:38 | | date mailed notice | | | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | | | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PAMELA ROBBINS,

    Plaintiff,

    v.

PROVENA HOSPITALS, INC.,

    Defendants.

No. 03 C 1371
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Plaintiff Pamela Robbins brings this action against Defendant Provena Saint Joseph

Hospital ("Medical Center") for terminating her in violation of the anti-retaliation provision of

the False Claims Act (Count I) and for damages arising out of her retaliatory discharge in

violation of Illinois law and public policy, specifically the "duty to report" (Count II) and "right

to testify for the benefit of the members of the Illinois General Assembly" (Count III). The

Medical Center has moved to dismiss Count I pursuant to Federal Rule of Civil Procedure

12(b)(6) or, alternatively, to dismiss Counts II and III on the grounds that under Illinois law, a

separate cause of action for retaliatory discharge will not stand where an adequate alternative

remedy is available.


Factual Background

Robbins is a registered nurse and was employed by the Medical Center from January 8,

1979 until she was terminated on June 7, 2002. Robbins was the co-chair and later chair of the

Illinois Nurses Association ("INA"), the exclusive bargaining unit for the registered nurses at the

Medical Center. In this capacity, she complained about the adequacy of nurse staffing. In

February 2001, Robbins met with the Director of the Illinois Department of Public Health

("IDPH") and other officials to raise her concerns about inadequate staffing at the Medical

Center. The IDPH inquired if the staffing concerns were affecting patient care and advised the

nurses to record any delays in patient treatment. Robbins alleges that she learned that delays in

patient care could affect the Medical Center's right to participate in and receive reimbursement

for Medicare or Medicaid related services. After the meeting, Robbins and other nurses changed

the "assignment despite objection" ("ADO") forms to expressly notify the Medical Center about

delays in patient treatment as a result of inadequate staffing. Robbins also advised the nurses to

file the forms with Medical Center supervisors to comply with Illinois regulatory law, which

requires nurses to "[r]eport unsafe, unethical, or illegal care practice or conditions to the

appropriate authorities." Ill. Admin. Code tit. 68, § 1300.42. The nurses at the Medical Center

subsequently filed hundreds of ADOs from 2001 to the beginning of 2002, which alleged delays

in patient treatment and unsafe staffing levels.

In early 2002, Robbins and other nurses helped organize public legislative hearings on

Illinois House Bill 959, the Patient Safety Act, which proposed to give nurses a role in

determining staffing levels and to impose penalties on facilities that refused to do so. Robbins

and other nurses attended these televised hearings in March 2002. Before these hearings,

Robbins alleges that she was detained and questioned by Medical Center security guards

regarding the hearings.

In May 2002, Robbins circulated petitions addressed to the IDPH demanding

investigation into whether the Medical Center was providing safe nursing standards. The petition

stated that the "INA believes the current staffing situation and any future efforts to 'downsize'

not only violates the various acts, codes and laws governing safe patient care delivery, [w]e believe it greatly endangers the lives of our patients." Over 160 nurses signed the petition. On May 30, 2002, a Medical Center manager confiscated the petition from a nurse.

On May 22, 2002, the Medical Center notified several nurses that their jobs had been eliminated. One of the affected nurses asked Robbins to represent her in a meeting with Human Resources. Several of the other affected nurses joined Robbins to attend the meeting. A Human Resource manager told the nurses that they could not all be present, so Robbins told the other nurses to wait in a cafeteria. Two weeks later, the Medical Center notified Robbins that it needed to interview her regarding the events of May 22, 2002 and that she would need to retain a grievance representative. After meeting with the Medical Center officials, Robbins was placed on indefinite suspension on June 6 and terminated on June 7, 2002 for allegedly violating an agreement prohibiting nurses from engaging in strikes and work stoppages.

Legal Standard

The purpose of a motion to dismiss under Rule 12(b)(6) is to "test the sufficiency of the complaint, not to decide the merits" of the case. *Triad Associates, Inc. v. Chicago Housing Authority*, 892 F.2d 583, 586 (7th Cir. 1989). In reviewing a motion to dismiss, the court must construe all allegations in the complaint in the light most favorable to the plaintiff and accept all well-pleaded facts and allegations as true. *Bontkowski v. First National Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993). A complaint should only be dismissed when "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). However, the complaint must allege

facts sufficiently setting forth the essential elements of the cause of action. *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992).

## Count I: False Claims Act

The False Claims Act (FCA) allows the federal government to impose civil sanctions against parties defrauding the federal government. 31 U.S.C. § 3729. It also permits a private individual to bring a *qui tam* action for fraud and provides an anti-retaliation provision for employees who investigate this possible fraud. 31 U.S.C. § 3730(h). To establish a retaliation claim against the Medical Center under § 3730(h), Robbins must show that: (1) her actions were protected by the statute (*i.e.*, taken "in furtherance of" an FCA enforcement action); (2) the Medical Center knew she was engaged in this protected conduct; and (3) the Medical Center's motivation to discharge her, at least in part, was motivated by her protected conduct. *Brandon v. Anesthesia & Pain Mgmt. Assoc., Ltd.*, 277 F.3d 936, 944 (7th Cir. 2002). The Medical Center claims that Robbins failed to establish that she was engaged in protected conduct or that the Medical Center knew that she was engaged in protected conduct.

The statute's protections "are aimed at employees 'exposing fraud' or attempting to 'expose fraud,' not employees with concerns wholly detached from the purportedly fraudulent activity . . . . [T]he purpose of the employee's investigatory activity must contain at least some ingredient of uncovering fraudulent activity." *Luckey v. Baxter Heathcare Corp.*, 2 F.Supp.2d 1034, 1051 (N.D. Ill. 1998), *aff'd.* 183 F.3d 730 (7th Cir. 1999). Attempting to correct regulatory noncompliance, absent fraud, is not actionable under the FCA. *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1269 (9th Cir. 1996). The action protected under the statute is

defined to "include situations in which a *qui tam* action is a 'distinct possibility,' or 'litigation could be filed legitimately - that is, consistently with Fed.R.Civ.P. 11.'" *Brandon*, 277 F.3d at 944 (quoting *Neal v. Honeywell*, 33 F.3d 860, 864 (7th Cir. 1994)).

The Medical Center claims that Robbins was not engaged in protected conduct, but rather was attempting to force the hospital to hire more registered nurses. Robbins complained about staffing levels and accused the Medical Center of not being compliant with state regulations. The most Robbins alleged, the Medical Center claims, is that she was investigating understaffing of nurses that could ultimately disqualify the Medical Center from participating in Medicare or Medicaid reimbursement programs. However, there is a critical difference between failing to qualify for Medicare/Medicaid reimbursement and submitting false information to collect such reimbursement. If Robbins was only investigating staffing levels to determine the Medical Center's *future* Medicare/Medicaid participation, her activity is not protected as it is not investigating fraud. However, if Robbins was investigating staffing levels to show that the Medical Center was not compliant with regulations which are conditions for payment, and thus falsely representing its compliance with the regulations, then Robbins' actions were protected.

It is clear that Robbins was attempting to increase the number of registered nurses on staff. Robbins alleges that the Medical Center was inadequately staffed and that this was causing delays in patient treatment. Robbins further alleges in her complaint that she learned that "delays in patient treatment could affect the defendant Hospital's right to participate in and receive reimbursement for Medicare and Medicaid related services" and that with significant delays, the "Hospital would not be providing the care which certain health regulations require in connection with Medicare and Medicaid services." Although, merely attempting to get an employer to

5

comply with regulations is not actionable without fraud, *see Hopper*, 91 F.3d at 1269, Robbins

claims that the Medical Center was potentially "falsely representing its compliance with certain

health regulations when submitting claims for reimbursement for certain Medicare and Medicaid

services." Documenting staffing levels and delays in patient treatment would be one way to

investigate the Medical Center's compliance with regulations, which could later be used to show

false representations. Robbins also requested, via the petitions, that the IDPH investigate the

Medical Center's staffing levels and unsafe conditions. While not explicitly stated in the

complaint, the IDPH investigates fraud on behalf of the Centers for Medicare and Medicaid

services. At this stage, it is possible that Robbins knew this. The right of the Medical Center to

"receive reimbursement" can be interpreted as either the Medical Center's right to receive

reimbursement in the future or the Medical Center's right to *have received reimbursement in the*

*past* for Medicare and Medicaid services. Thus, it is possible that Robbins was investigating

potentially false representations made by the Medical Center to the federal government. She has

thus sufficiently pleaded that she was engaged in protected conduct.

The Medical Center further claims Robbins did not adequately plead that the Medical

Center *knew* that she was engaged in protected conduct at the time it terminated her employment.

The Medical Center claims that she never raised any fraud issues against the Medical Center

before filing her complaint. Robbins claims the Medical Center knew that the ADO forms and

her complaints to state legislators, along with the petitions addressed to the IDPH, had become

the basis for a formal complaint to governmental authorities, and that the Medical Center could

reasonably expect those authorities to investigate potential false representations of compliance

with regulations when the Medical Center submitted reimbursements for Medicare and Medicaid

6

services.  The ADO forms, which noted the inadequate staffing levels resulting in delays in

patient treatment, alone could not reasonably give the Medical Center notice of an investigation

into Medicare or Medicaid fraud.  There is nothing in the complaint to indicate that the ADO

forms were submitted to anyone but the Medical Center.  Although attempting to convince an

employer to comply with regulations "usually does not put an employer on notice of potential

FCA litigation," *Brandon*, 277 F.3d at 945, the plaintiff in *Brandon* never threatened to report the

illegal conduct to the government before he was discharged.  In this case, however, Robbins did

report violations of regulations to government authorities during the hearings and was in the

process of reporting violations to the IDPH through the petitions.  Robbins was allegedly

detained by Medical Center security guards and questioned about the hearing, and a Medical

Center manager allegedly confiscated a petition addressed to the IDPH.  Thus, the complaint

sufficiently alleges that the Medical Center knew before Robbins was terminated that she was

investigating the Medical Center and had contacted government authorities regarding that

investigation.

Nonetheless, employers must "be on notice, not only of the voiced concerns and

investigations of the employee, but that the employee's actions are related to the employer's

alleged false claims to the government." *Luckey*, 2 F.Supp.2d at 1055.  It is clear that the

Medical Center knew that Robbins was concerned about nurse staffing, but the question is

whether Robbins "couch[ed] her concerns or investigation in terms of funds her employer

fraudulently obtained from the government." *Id.* In *Hopper v. Anton*, the plaintiff complained

(by numerous written complaints, 70 letters, and over 50 phone calls) to state officials and to her

employer that it was violating state and federal regulations, but she "never gave any indication

7

she was investigating the School District for defrauding the federal government." 91 F.3d at 1269-270. An investigation of regulation violations, without a fraudulent component in the complaints to the employer, does not give the employer "notice that [the] employee's activities were done to further a FCA action." *Luckey*, 2 F.Supp.2d at 1055. Nothing here indicates that Robbins threatened a *qui tam* action, notified the Medical Center that she was investigating fraud, or accused the Medical Center of making false representations, violating the FCA, or defrauding the federal government. Thus, Robbins failed to adequately plead that the Medical Center had the requisite notice that she was investigating fraud and has thus failed to sufficiently allege a retaliation claim under the FCA. Accordingly, I dismiss Count I.

In light of the dismissal of Count I, the Medical Center's alternative argument for dismissing Counts II and III – that a separate cause of action for retaliatory discharge will not stand where an adequate alternative remedy is available – is now moot in light of the fact that the FCA claim in Count I no longer exists as an adequate alternative remedy.

For the reasons above, the Medical Center's Motion to Dismiss is GRANTED as to Count I, but is DENIED as to Counts II and III.

ENTER:

James B. Zagel
United States District Judge

DATE: 25 ___ 2003

8