# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 1371 | **DATE** | 3/10/2004 |
| **CASE TITLE** | PAMELA ROBBINS V.  PROVENA SAINT JOSEPH MEDICAL CENTER | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Motion (14-1) to compel is granted in part and denied in part. Enter Memorandum Opinion and Order.**

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| X | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

number of notices

MAR 1 1 2004
date docketed

15
docketing deputy initials

date mailed notice

U.S. DISTRICT COURT
CLERK
2004 MAR 10 PM 5: 03

Date/time received in central Clerk's Office

courtroom deputy's initials

DW

Document Number

17

mailing deputy initials

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

PAMELA ROBBINS,

    Plaintiff,

    v.

PROVENA SAINT JOSEPH MEDICAL
CENTER,

    Defendant.

No. 03 C 1371
Judge James B. Zagel

MAR 1 2 2004

## MEMORANDUM OPINION AND ORDER

On June 7, 2002, Defendant Provena Saint Joseph Medical Center ("Medical Center")

terminated Plaintiff Pamela Robbins. Robbins subsequently filed a charge with the National

Labor Relations Board claiming that her termination was in retaliation for engaging in protected

union activity. Robbins also filed the instant lawsuit, which initially alleged that her termination

was for opposing fraud with respect to Medicare and Medicaid reimbursement. That claim was

dismissed on June 23, 2003 because there was no factual basis for the claim. Robbins's suit now

alleges that her termination was in retaliation for reporting to the Illinois Department of Public

Health ("IDPH") that the Medical Center was understaffed with registered nurses, and because

she participated in a legislative hearing about perceived understaffing. Robbins now moves,

pursuant to Federal Rule of Civil Procedure 37, to compel the Medical Center to respond to

certain discovery requests in her (1) First Request for Production of Documents, (2) Third

Request for Production of Documents, and (3) First Set of Interrogatories.[1]

---

[1] In its brief in opposition to Robbins's motion, the Medical Center states its basis for not
answering Interrogatories No. 6 and 7 in her First Set of Interrogatories, but these are not
included within Robbins's motion to compel. Accordingly, I will not address them, but if I were

17

Federal Rule of Civil Procedure 26(b) provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party," and that "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." The rule also permits discovery of information, which although not admissible at trial, appears reasonably calculated to lead to the discovery of admissible evidence. The rule thus permits a broad range of discovery and vests the court with "wide discretion in determining the scope and effect of discovery." *Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486, 1505 (11th Cir. 1985). "In general terms [Rule 26] poses a very low hurdle – it permits 'discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action.'" *Eirhart v. Libbey-Owens-Ford Co.*, 93 F.R.D. 370, 371 (N.D. Ill. 1981). As to the discovery requests at issue here, the Medical Center objects on the grounds that the materials requested are privileged and/or not relevant.

Privilege

In her various discovery requests, Robbins requested information regarding intra-company complaints, such as Assignment Despite Objection Forms ("ADOs") filed by staff nurses, pertaining to nurse understaffing and related issues at the Medical Center. Robbins also requested other intra-company information pertaining to such complaints, such as follow-up correspondence, investigations, and conclusions. The Medical Center first objects to the disclosure of ADOs and related information on the grounds that they are protected from discovery by the Self-Critical Analysis Privilege. *See Morgan v. Union Pac. R.R. Co.*, 182

_____

to address them, I would not compel the Medical Center to answer them.

2

F.R.D. 261, 264 (N.D. Ill. 1998) (presuming that federal common law recognizes the privilege).

The purpose of the Self-Critical Analysis Privilege is to "protect from disclosure documents

containing candid and potentially damaging self-criticism." Donald P. Vondergraft, Jr., Legal

Development: The Privilege of Self-Critical Analysis: A Survey of the Law, 60 Alb. L. Rev. 171,

175-76 (1996). The privilege is granted on the premise that disclosure of documents reflecting

candid self-examination will deter or suppress socially useful investigation and evaluations.

*Sheppard v. Consol. Edison Co.*, 893 F. Supp. 6, 7 (E.D.N.Y. 1995). Thus, "courts generally

acknowledge that determining whether the privilege applies requires the court to balance the

public interest in protecting candid corporate self-assessments against the private interest of the

litigant in obtaining all relevant documents through discovery." *Morgan*, 182 F.R.D. at 264. In

determining whether the privilege applies, I must look at whether the party asserting the privilege

establishes that: (1) the information resulted from a critical self-analysis taken by the party

seeking protections; (2) the public has a strong interest in preserving the free flow of the type of

information sought; (3) the information is of the type of information whose flow would be

curtailed if discovery were allowed; and (4) the documents were prepared with the expectation

that they would be kept confidential.[2] *Id.* at 264.

Here, I find that the ADOs and related information satisfy the four-prong standard for

protection under the Self-Critical Analysis Privilege. First, Robbins's own characterization of

---

[2] Robbins contends that the documents are not privileged because they are not
government mandated reports. She is correct that in the context of employment discrimination
cases, the materials at issue must have been prepared for mandatory government reports in order
for the privilege to apply. *Tice v. Am. Airlines, Inc.*, 192 F.R.D. 270, 272 (N.D. Ill. 2000).
However, this case involves two claims for the common law tort of retaliatory discharge, and in
the context of a tort case, there is no requirement that the materials sought must have been
prepared for mandatory government reports. *Id.*

the ADOs demonstrates that they are self-generated for the purpose of critical analysis. Moreover, the ADOs are utilized by a Patient Care Committee, which is made up of INA nurses and members of management of the Medical Center, to identify opportunities to improve patient care. Second, the public has a strong interest in preserving the free flow of such information because it can result in improved patient care. Third, the ability of litigants to use the forms against the Medical Center is a legitimate basis for the Medical Center to stop utilizing them. Finally, the documents are maintained in a confidential manner in that they are only distributed to employees of the Medical Center who have a need to know the information for purposes of improving patient care. Accordingly, the ADOs and related documents fit precisely within the definition of information protected by the privilege.

In addition to the common law privilege, the Medical Center claims that the Illinois Medical Studies Act (the "Act") also protects ADOs and related information from disclosure. The Act states:

> [A]ll information, interviews, reports, statements, memoranda, recommendations . . . or other data of . . . health care delivery entities or facilities . . . used in the course of internal quality control or of medical study for the purpose of reducing morbidity or mortality, or for improving patient care . . . shall be privileged, strictly confidential and shall be used only for medical research, increasing organ and tissue donation, the evaluation and improvement of quality care, or granting, limiting or revoking staff privileges.

> Such information, records, reports, statements, notes, memoranda or other data shall not be admissible as evidence nor discoverable in action of any kind in any court.

735 ILCS 5/8-2101 *et seq*. The purpose of the Act is to ensure that members of the medical profession will engage in self-evaluation in the interest of advancing the quality of health care. *Doe v. Illinois Masonic Med. Ctr.*, 696 N.E.2d 707, 709 (Ill. App. Ct. 1998). In this case, the Act is applicable to the ADOs and related documents for the same reasons that the common law Self-

Critical Analysis Privilege applies. The ADOs constitute confidential information that is self-generated and used for the purpose of evaluating and improving patient care. Robbins contends that the Medical Studies Act does not apply because the Act only protects patient records, but I see no such limitation in the Act.

Accordingly, I deny Robbins's Motion to Compel as to the following discovery requests on the grounds that the information requested is protected by the Self-Critical Analysis Privilege and/or the Illinois Medical Studies Act or because the requests themselves are so over broad, that they include information protected by the Self-Critical Analysis Privilege and/or the Illinois Medical Studies Act :

Plaintiff's First Request for Production

- REQUEST NO. 4: All documents relating to the "assignment despite objections" or "ado's" filed by various nurses of St. Joseph's Hospital in the years 2001, 2002, and 2003, and any and all investigations by St. Joseph's Hospital as to their complaints.

- REQUEST NO. 5: All documents relating in any way to attempts to ensure there is adequate nurse staffing at St. Joseph's Hospital.

- REQUEST NO. 6: All documents related in any way to any complaints received by Provena with respect to the adequacy of nurse staffing at St. Joseph's Hospital.

Plaintiff's Third Request for Production

- REQUEST NO. 3: All documents that show or explain or describe any shortfalls or difficulties that Provena has had in connection with recruiting or hiring or retaining nurses at St. Joseph's or for Provena generally.

- REQUEST NO. 6: All documents containing studies and internal memoranda relating to the problem of nurse understaffing or to the claims of alleged nurse understaffing at Provena by the plaintiff Robbins or by the Illinois Nurses Association or by the Illinois Department of Public Health.

<u>Plaintiff's First Set of Interrogatories</u>

- INTERROGATORY NO. 1: With respect to the "assignment despite objections" or "a.d.o.'s" referred to in paragraphs 17 through 21 of the amended complaint, describe what actions Provena took in response to each "a.d.o.", who specifically took the action, who if anyone (including any nurse) was interviewed, and identify any documents generated by Provena with respect to the "a.d.o.'s".

- INTERROGATORY NO. 7: Identify each and every documented "medical error" (including medication errors) at St. Joseph's Hospital in the three years prior to the filing of this action and state whether the error involved a nurse.

- INTERROGATORY NO. 8: For each of the last five years, state the nurse patient ratio in each such year separately and respectively for St. Joseph's and other Provena hospitals, and identify any documents that evidence such ratio.


<u>Relevance</u>

In addition to seeking information from the Medical Center, Robbins seeks information from Provena's corporate entity and all Provena health care facilities because "all hospitals in the Provena system are under the common control of Provena." However, Robbins was only employed by the Medical Center and not by Provena Health, Inc. or any other related entity. The only people involved in the decision-making process with respect to Robbins's hiring, performance evaluations, disciplinary issues, and termination were managers and supervisors of the Medical Center. Second, the Medical Center is the only defendant that has appeared in this case. Thus, Provena's corporate entity and other health care facilities are not subject to Robbins's interrogatories and document requests. Accordingly, I deny Robbins's Motion to Compel as to information related to entities other than the Medical Center because such information is not relevant to Robbins's claims against the Medical Center. Furthermore, to the

extent that the Medical Center is compelled to respond to any of the discovery requests here, it is ordered to do so as to itself, and not as to any other Provena entity or facility.

Along with this limitation, I deny the Motion to Compel as to the following portions or the entirety of the following requests on the grounds that they are irrelevant:

Plaintiff's First Request for Production

- REQUEST NO. 8: All documents relating to any government investigation or government inquiry of any kind as to delays in treatment of patients at . . . any other Provena hospital or as to nurse understaffing at . . . any other Provena hospitals.

- REQUEST NO. 11: All documents relating to St. Joseph's Hospital's labor policies with respect to nurses, including but not limited to its use of labor consultants or non attorney consultants of any kind with respect to unionization of nurses or issues relating to the bargaining unit represented by the Illinois Nurses Association.

Plaintiff's Third Request for Production

- REQUEST NO. 1: All documents showing the number of so-called "agency" nurses and non-staff nurses used by Provena in general . . . on an annual basis.

- REQUEST NO. 2: All documents showing the number and type of nurse vacancies existing at Provena in general . . . on an annual basis.

- REQUEST NO. 5: All documents showing the nurse-to-patient "ratios" in the various principal units at . . . other hospitals operated by Provena.

Plaintiff's First Set of Interrogatories

- INTERROGATORY NO. 9: For each of the last five years, state the number of patients who have died respectively at St. Joseph's Hospital or other Provena hospitals.

- INTERROGATORY NO. 10: Identify every meeting, conversation and communication between any employee or official . . . of Provena and any person representing the Illinois Department of Public Health or any other state or federal agency with respect to the letter of June 11, 2002 of Pamela Robbins referred to in the amended complaint and/or the related petition signed by various nurses at St. Joseph's at approximately the same time, and state the time, place and substance of such conversation or communication, written or oral.

- INTERROGATORY NO. 11: Identify every contact conversation or communication between any officer of Provena and any person representing the Illinois Department of Public Health with respect to the issue of nurse understaffing or nursing issues generally in the 2000-03 time period and state the time, place and substance of each such conversation or communication.

Remaining Requests

Having addressed each of the Medical Center's grounds for objecting to the contested discovery requests, I grant the Motion to Compel as to the following discovery requests because I see no reason not to:[3]

Plaintiff's First Request for Production of Documents

- REQUEST NO. 8: All non-privileged documents relating to any government investigation or government inquiry of any kind as to delays in treatment of patients at St. Joseph's or as to nurse understaffing at St. Joseph's Hospital.

- REQUEST NO. 10: All non-privileged documents relating to any inquiries or correspondence from the Department of Professional Registration or the Illinois Department of Public Health with respect to any matter relating to nursing practice at St. Joseph's Hospital.

Plaintiff's Third Request for Production of Documents

- REQUEST NO. 1: All non-privileged documents showing the number of so-called "agency" nurses and non-staff nurses used by St. Joseph's Hospital on an annual basis.

- REQUEST NO. 2: All non-privileged documents showing the number and type of nurse vacancies existing at St. Joseph's Hospital on an annual basis.

- REQUEST NO. 5: All non-privileged documents showing the nurse-to-patient "ratios" in the various principal units at St. Joseph's Hospital.

---

[3] The parties should note that I have altered these requests in accordance with my ruling that only the Medical Center itself is subject to discovery in this case.

Plaintiff's First Set of Interrogatories

- INTERROGATORY NO. 2: With respect to the public hearing on March 13, 2002, referred to in paragraphs 26 through 37 of the amended complaint, describe what actions St. Joseph's Hospital took with respect to any aspect of the hearing (including contacts with legislators, press or public), who specifically took it, the substance of related conversations if any such person had, and identify any documents generated with respect to the hearing.

- INTERROGATORY NO. 3: With respect to the Patient Safety Act referred to in paragraph 26 of the amended complaint, describe what actions St. Joseph's Hospital took to encourage or discourage or support or oppose the proposed act, who specifically took the action, and what legislator if any was contacted and what was said to him or her.

- INTERROGATORY NO. 10: Identify every meeting, conversation and communication between any employee or official at St. Joseph's Hospital and any person representing the Illinois Department of Public Health or any other state or federal agency with respect to the letter of June 11, 2002 of Pamela Robbins referred to in the amended complaint and/or the related petition signed by various nurses at St. Joseph's at approximately the same time, and state the time, place and substance of such conversation or communication, written or oral.

For the reasons above, Robbins's Motion to Compel Certain Discovery is GRANTED in part and DENIED in part.

ENTER:

James B. Zagel
United States District Judge

DATE: 10 March 2004